**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NUMBER: 1:18 CR-00710-001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| -vs- | ) | |
| | ) | |
| WILLIAM SIZEMORE | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

Now comes the Defendant, William Sizemore, by and through his attorney, James D. Ingalls, and hereby submits to this Honorable Court his sentencing memorandum to help guide this Court in setting forth a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2) and after considering all the factors of §3553(a).

                                                          Respectfully submitted,

                                                          /S/ *James D. Ingalls*
                                                          JAMES D. INGALLS, 0053071
                                                          55 Public Square, 21st Floor
                                                          Cleveland, Ohio 44113
                                                          (216) 363-6030
                                                          (216) 363-6054 facsimile
                                                          jdilaw@gmail.com
                                                          Counsel for Defendant

## WILLIAM SIZEMORE'S SENTENCING MEMORANDUM

I. **STATEMENT OF THE CASE**

On November 21, 2018, Defendant William Sizemore, hereinafter referred to as Sizemore, together with co-defendants Malik Ross and Dante Perkins, were charged in a two (2) count indictment of possessing with the intent to distribute cocain, a violation of 21 U.S.C. §841(a)(1), (b)(1)(B) and Attempted Possession of a Controlled Substance with the Intent to Distribute, a violation of 21 U.S.C. §841(a)(1), (b)(1)(B).  On January 17, 2019, Defendant Sizemore appeared before this Honorable Court and plead guilty to a lesser included offense of Drug Conspiracy, a violation of Title 21 U.S.C. §846, and to Attempted Possession of a Controlled Substance with the Intent to Distribute, a violation of 21 U.S.C. §841(a)(1).

A final pre-sentence investigation report ("PSI") was prepared and filed with the Court on April 15, 2019.   Defendant Sizemore now addresses the following issues which are relevant to this Honorable Court's determination of a sentence in this case.

II. **LAW AND ARGUMENT**

In United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005) (holding 18 U.S.C. § 3553(b)(1) unconstitutional and excising it from §3553 while leaving the balance of the statute intact), the Supreme Court altered the landscape of federal sentencing, for the United States Sentencing Guidelines are no longer mandatory. Although the Sentencing Reform Act still "requires a sentencing court to consider Guidelines ranges . . . it permits the court to tailor the sentence in light of other statutory concerns as well," 125 S.Ct. at 757, and a significant measure of judicial discretion has been restored. United States v. Jackson, 408 F.3d 301, 304 (6th Cir. 2005) ("after Booker . . . district courts have enhanced discretion in the sentencing of criminal

defendants"). This means that while this Court must "articulate its reasoning . . . in order to allow for reasonable appellate review," United States v. Williams, 436 F.3d 708-09 (6th Cir. 2006); United States v. Kirby, 418 F.3d 621, 626 (6th Cir. 2006); *see, also,* § 3553(c); this Court is not limited by the no-longer-mandatory provisions of the Guidelines respecting departures should it elect to impose a sentence above or below the range computed under the Guidelines. Simply put, this Court is required to impose and articulate its reasons for a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in " 18 U.S.C. § 3553(a)(2) after considering all the factors of § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

(5) any pertinent policy statement

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and,

>    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

The clear mandate of the statute is, that after considering the relevant 18 U.S.C. § 3553 (a) factors, the court will impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection (a). See United States v. Harris, No. 05-4259, 2007 WL 1713286, at *3 (7th Cir. June 15, 2007).

While the Supreme Court has held that a guideline sentence may, on appeal, be presumed reasonable, that presumption "applies only on appellate review." Rita v. United States, No. 06-5754, 2007 WL 1772146, at *9 (U.S. June 21, 2007). Nevertheless, the Court stated that the district court (the sentencing judge) was forbidden from indulging a similar presumption that the guideline sentence is necessarily the correct sentence. Rita, 2007 WL 1772145, at *9. Moreover, post Booker, in addition to the 18 U.S.C. § 3553 (a) factors, U.S.S.G. §5 H of the now advisory Guidelines lists factors previously prohibited from consideration by sentencing courts. Consistent with the mandate to consider relevant §3553(a) factors, district courts may now determine whether the age, education, and vocational skills, mental and emotional condition, employment record, family ties and responsibilities and disadvantaged background are relevant to the imposition of sentence upon a particular defendant.

Mr. Sizemore contends the application of Booker and careful and thoughtful application of the 18 U.S.C. §3553(a) factors and other relevant considerations are especially critical in this case because he is before this Court charged with criminal offenses which could place him in federal prison for a considerable length of time.

The Sentencing Guidelines are thus but one of the several factors that must be considered. "In our view, Booker requires an acknowledgment of the defendant's applicable Guidelines range as well as a discussion of the reasonableness of a variation from that range." Jackson, 408 F.3d at 305. But in contrast to pre-*Booker* practice, the Guidelines do not by themselves control the Court's sentencing decision. It is up to the Court to determine what weight to give each factor, including the Guidelines:

> While we decline to indicate what weight the district courts must give to the appropriate Guidelines range, or any other § 3553(a) factor, we also decline to hold that a sentence within a proper Guidelines range is *per-se* reasonable. Such a per-se test is not only inconsistent with the meaning of reasonableness" (. . . reasonableness is a concept of flexible meaning, generally lacking precise boundaries), but is also inconsistent with the Supreme Court's decision in *Booker*, as such a standard would effectively re-institute mandatory adherence to the Guidelines. United States v. Webb, 403 F.3d 373, 385 n.9 (6th Cir. 2005) (internal quotation marks and citation omitted). See, also, United States v. McBride, 434 F.3d 470, 475 (6th Cir. 2006) (declaring that the "focal point" for a district court imposing a sentence is § 3553(a), and that "while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant").

Moreover, 18 U.S.C. §3661 remains intact: "No limitation shall be placed on the [receipt and consideration of] information concerning the background, character and conduct of [the defendant]." See, also Booker, 125 S.Ct. at 759 (the District Court "must conduct a comprehensive examination of the characteristics of the particular offense and the particular offender"); United States v. Coleman, 188 F.3d 354, 358 (6th Cir.1999) (en banc) (there are a "potentially infinite number of factors which may warrant a departure").

In light of the aforementioned, this Court is asked to consider all of the factors discussed below in fashioning an appropriate sentence that is sufficient, but not greater than necessary, to comply with the purposes set out in 18 U.S.C. § 3553(a)(2).

### III. THE SENTENCING GUIDELINES, 18 U.S.C. § 3553(A)(4)

The Court should first calculate the advisory Guideline range and then "throw this ingredient into the 3553(a) mix." McBride, 434 F.3d at 476.

The PSI Report correctly states Sizemore's base offense level is a twenty-six (26), with a criminal history category II - 2 points.  See U.S.S.G. §2B1.1.   The report then subtracts (3) points for 'Acceptance of Responsibility,' pursuant to U.S.S.G. §3E1.1(a) and (b), thereby bringing Sizemore's total adjusted offense level to Twenty (23) with a criminal history category II.

### A. Other 18 U.S.C. §3553(a) Factors

The other factors that this Court is asked to consider and "throw into the §3553(a) mix" include the following:

**1. The Offense Conduct, USSG § 2D1.1.**

On October 31, 2018, an unidentified source working with the Federal Bureau of Investigations met Defendant Ross and Defendant Sizemore in the source's vehicle at a Cleveland hotel parking lot to sell Defendants one kilogram of cocaine and to 'front' Defendants one additional kilogram which would be paid for after being sold.  The money used to purchase the cocaine came from Defendant Dante Perkins who was present during the drug transaction.   Once the transaction was completed, the FBI converged onto the vehicles and the occupants and subsequently affected defendants' arrests.

**2. The History and Characteristics of the Defendant, § 3553(a)(1).**

Defendant William Sizemore is thirty-eight (38) years old and is the oldest of eleven (11) brothers and sisters. His mother, Cheryl Sizemore, and his father, William Fair, never married. His mother fought drug addition his entire childhood and his father was incarcerated a great deal of his childhood. Early in his childhood, his mother got married and soon thereafter, Mr. Sizemore, along with his mother, were physically and emotionally abused by his Step-Dad. At age eight (8), following a physically, abusive episode, Mr. Sizemore used a 2x4 to hit his Step Dad to stop him from beating his mother. Following this incident, Mr. Sizemore, together with his mother and siblings gathered their belonging and permanently left their home. During the next several years, Mr. Sizemore was forced into being a father figure for the family. He recalls a number of times of having to go without utilities and bringing home food from the school's free lunch program to share with his brothers and sisters for dinner. At age sixteen (16), do to his mother's drug addiction, Cuyahoga County Children and Family Services removed all his brothers and sisters from the home and placed them in foster care with relatives. During this time, Mr. Sizemore would go to meetings with his mother to help her complete the Children Services family reintegration case plan and then, he eventually moved back with her when he turned eighteen (18). In 1999, after helping his mother become drug free and complete other aspects of the case plan, his mother and younger siblings were reunited under one roof.

Despite his tumultuous childhood, Mr. Sizemore graduated from Christian Academy High School in Cleveland where he became involved in wrestling and football as a means of escape from his hectic and chaotic home situation.

After graduating from high school, Mr. Sizemore became a father to two (2) children, William Sizemore Jr., and Tyra Golsen. In 2007, Mr. Sizemore married Dawn Johnson with whom

he had two (2) children together - Tai-Beauty Sizemore and Tristan Sizemore.  They lived in Nashville, Tennessee, then relocated to Scottsdale Arizona.  During this time, Mr. Sizemore completed one (1) year of Barber school in 2009-2010 in Nashville before moving to Scottsdale where he attended Le Cordon Blue Culinary School and received a culinary degree/certificate.  In 2014, Mr. Sizemore and his wife moved back to Ohio and lived in Shaker Height, Ohio.  In March 2016, Mr. Sizemore incorporated a catering business called 'Gourmet 2 Go LLC' which generated minimal income in 2016 thru 2018.  In late 2016 thru early 2017, Mr. Sizemore went through a divorce which found himself turning to drinking heavily and occasionally using illegal drugs - cocaine.  In 2018, he worked as a Chef for Captive 8 Lounge in Cleveland, Ohio.  However, during this time, his younger brother, Sir Sizemore, was murdered in August 2018 and Mr. Sizemore continued on a down ward spiral of depression and began drinking heavily everyday, using cocaine and was eventually evicted from his home and lost his job.  It was also during this time in 2018 that Mr. Sizemore fathered Denver Sizemore and Jacar Young.

Throughout the aforementioned time, Mr. Sizemore has maintained a relationship with all his children, however, due to his present incarceration, he has been unable to establish any loving bond with his two infant sons.

As noted in his PSI Report, Mr. Sizemore suffers from an enlarged heart, high blood pressure, gout and kidney problems.  He presently is prescribed and takes Amlodipine for his blood pressure, Cozaar for his enlarged heart and blood pressure and Allopurinol for his kidney problem.

### 3. The Need for Deterrence, § 3553(a)(2)(B).

The question here is whether in sentencing Sizemore, the Court needs to deter others from future criminal activity and, if so, what form or length of sentence will accomplish this end. Sizemore views this factor as distinct from the need to protect the public from possible, future crimes by him, a separate factor codified in §3553(a)(2)(C) (see below). In other words, should this Court's

sentence be crafted, in part, as a warning to others what will befall them if they commit similar offenses? This question is the subject of continuous public debate as well as debate in the federal judicial system, and there is no firm, generally accepted answer.

Sizemore asserts considering the purpose of 18 U.S.C. §3553, the information set out herein and Sizemore's P.S.I., there is no pressing need to achieve some moot degree of deterrence by making an example of him. The laudable goal of deterrence would be no less achieved by a shorter term of imprisonment followed by a strict probation and supervision, rather than a lengthy prison term.

### 4. The Need to Protect the Public from Further Crimes by this Defendant, §3553(a)(2)(C)

Due to his pending incarceration, Mr. Sizemore certainly cannot pose a threat to the public in the foreseeable future. Mr. Sizemore is sincere in his desire to address his present situation and to move forward to eventually reestablish his catering business and use his culinary skills to support his family. His primary motivation to be law abiding upon his release is to preserve his relationship with his girlfriend and mother of his youngest two (2) children and to preserve and maintain his relationship with all of his children, his mother, bothers and sisters.

Considering the nature of Mr. Sizemore case, his personal history and characteristics and his acceptance and responsibility, the public does not require Mr. Sizemore to be incarcerated for a significantly lengthy period of time for its protection.

### 5. Sentences Available, § 3553(a)(3).

The advisory guidelines for Mr. Sizemore shows an adjusted base offense level twenty three (23), criminal history category II, which sets forth a sentencing guideline range of 51 to 63 months of imprisonment - USSG §5C1.2(a); or the Court may exercise its discretion to select any sentence it finds will be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

Further, also as noted in his PSI Report, paragraph 97, if this Court determines that Mr. Sizemore meets the criteria in 18 U.S.C. §3553(f) as established by the First Step Act of 2018, Mr. Sizemore could receive a 2-level downward variance to account for the pending Guideline changes to USSG §2D1.1(b)(18) and subdivision (1)-(5) of subsection (a) of §5C1.2.

## IV. Conclusion

For all the reasons set forth hereinabove and in the Pre-Sentence Investigation Report and for such additional considerations as may emerge at the sentencing hearing, Defendant William Sizemore requests this Honorable Court to impose a sentence that is at the low end of the recommended guideline range of 51 to 63 months which is "sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2) after considering all the factors of §3553(a).

Respectfully submitted,

/s/ *James D. Ingalls*
JAMES D. INGALLS, 0053071
55 Public Square, 21st Floor
Cleveland, Ohio 44113
(216) 363-6030
(216) 363-6054 facsimile
jdilaw@gmail.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ *James D. Ingalls*
James D. Ingalls